**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANTONIO JULIAN LUCAS, MARTIN CANDELARIO TEPEPA, RICARDO RAMOS LUNA, and SEBASTIAN CALEL ZAPETA, Individually and on Behalf of All Others Similarly Situated,**<br><br>          **Plaintiffs,**<br><br>-against-<br><br><br>**EAE CORP. d/b/a SIDEWALK BAR & RESTAURANT, 94-96 AVENUE A REALTY CORP., PINCHAS MILSTEIN, JONA SZAPIRO, and AMNON LUCY KEHATI, Jointly and Severally,**<br><br>          **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Antonio Julian Lucas, Martin Candelario Tepepa, Ricardo Ramos Luna, and Sebastian Calel Zapeta (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former line cooks, food preps, dishwashers, and porters at Defendants' bar and restaurant located in Manhattan, New York.  For their work, throughout the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, and failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the six (6)-year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      Plaintiff Antonio Julian Lucas ("Julian") was, at all relevant times, an adult individual residing in Kings County, New York.

8.      Plaintiff Martin Candelario Tepepa ("Tepepa") was, at all relevant times, an adult individual residing in Kings County, New York.

9.      Plaintiff Ricardo Ramos Luna ("Ramos") was, at all relevant times, an adult individual residing in Kings County, New York.

10.     Plaintiff Sebastian Calel Zapeta ("Calel") was, at all relevant times, an adult individual residing in Queens County, New York.

11.     Throughout the relevant time period, Plaintiffs performed work for Defendants at "Sidewalk Bar & Restaurant", located at 94 Avenue A, New York, New York 10009.

12.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

13.     EAE Corp. is an active New York Corporation doing business as "Sidewalk Bar & Restaurant" with its principal place of business at 94 Avenue A, New York, New York 10009.

14.     Although EAE Corp. remains active, upon information and belief, EAE Corp. and the Individual Defendants permanently closed Sidewalk Bar & Restaurant on or about February 24, 2019, after thirty-four (34) years of operation.

3

15.    According to the New York State Department of State, Division of Corporations, EAE Corp. was registered on March 5, 1985.

16.    According to the New York State Department of State, Division of Corporations, Amnon Lucy (a.k.a Amnan) Kehati is the chief executive officer of EAE Corp.

17.    According to the New York State Liquor Authority, the individuals registered as principals holding the liquor license for EAE Corp. were Pinchas Milstein, Jona Szapiro, and Helah Kehati.  Under the liquor license regulations, Milstein, Szapiro, and Kehati were "responsible for the activities of employees and patrons in all parts of the licensed premises" and were "required to maintain adequate books and records of all the transactions involving [their] licensed business. This includes records recording [their] employees…." (*See* State Liquor Authority, Retail Licensees Handbook).

18.    94-96 Avenue A Realty Corp. is an active New York Limited Company with its principal place of business at 94 Avenue A, New York, New York 10009 and DOS Process address at 88 Rivington Street, New York, New York 10002.

19.    According to the New York State Department of State, Division of Corporations, 94-96 Avenue A Realty Corp. was registered on April 10, 1995.

20.    According to the New York State Department of State, Division of Corporations, Jona Szapiro is the chief executive officer of 94-96 Avenue A Realty Corp.

21.    Upon information and belief, during the relevant time period, individual defendant Amnon Lucy Kehati, was and still is, the President of 94-96 Avenue A Realty Corp.

22.    Upon information and belief, during the relevant time period, individual defendant Pinchas Milstein, was and still is, the Vice President of 94-96 Avenue A Realty Corp.

4

23.     EAE Corp. and 94-96 Avenue A Realty Corp. are hereinafter referred to collectively as "Sidewalk Café" or the "Corporate Defendants."

24.     The Corporate Defendants' operations are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs.

25.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies.

26.     Upon information and belief, Pinchas Milstein ("Milstein"), Jona Szapiro ("Szapiro"), and Amnon Lucy Kehati ("A. Kehati" and, collectively with "Milstein" and "Szapiro", the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") are owners and operators of the Corporate Defendants who set the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

27.     Upon information and belief, the Individual Defendants operate the Corporate Defendants as either alter egos of themselves and/or fail to operate the Corporate Defendants as entities legally separate and apart from themselves by, among other things, transferring assets and debts freely as between the Corporate Defendants and intermingling assets and debts of their own with the Corporate Defendants.

28.     Upon information and belief, 94-96 Avenue A Realty Corp. owns or used to own the premises where Sidewalk Café was located.

29.     Upon information and belief, the Corporate Defendants were located at the same address, managed by the same persons, and shared the same resources and personnel.

30.     Upon information and belief, during the relevant time period, the Individual Defendants used assets from EAE Corp. and 94-96 Avenue A Realty Corp. to operate Sidewalk Café, including to pay the cash wages to the employees of Sidewalk Café.

31.     Throughout the relevant time period, upon information and belief, the Individual Defendants were in charge of hiring and firing employees, setting schedules and wages, supervising employees and/or played a role in determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

32.     At all relevant times, the Individual Defendants had the power to enter into contracts on behalf of, and close, shut down and/or sell any of the Corporate Defendants.

33.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and are "employers" pursuant to NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

34.     The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

35.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

36.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

37.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross annual revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

38.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since September 25, 2016 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Sidewalk Café Bar & Restaurant (the "Collective Action Members").

39.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

40.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

41.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of

Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since September 25, 2013 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Sidewalk Café Bar & Restaurant (the "Class Members").

42.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

43.    The Class Members are so numerous that joinder of all members is impracticable.

44.    Upon information and belief, there are well in excess of forty (40) Class Members.

45.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

8

    e.   whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

    f.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

    g.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

    h.   whether Defendants failed to reimburse Plaintiffs and the Class Members for the cost of their uniform;

    i.   whether Defendants failed to pay Plaintiffs and the Class Members uniform maintenance pay;

    j.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

    k.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

46. Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were restaurant employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a

shift and/or split shift of ten (10) or more hours, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

47.    <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

48.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

49.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

50.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

51.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Sidewalk Café Bar & Restaurant

52.    Upon information and belief, throughout the relevant time period and until the moment of its closing, Sidewalk Café was open to the public seven (7) days per week, from 11:00 am to 4:00 am. (*See* http://www.sidewalkny.com/contact-us/).

53.     Upon information and belief, the Individual Defendants have owned and operated the Sidewalk Café through the Corporate Defendants since in or around 1985.

54.     According to the webpage of Sidewalk Bar & Restaurant, *"…SideWalk Café first opened its doors in 1985. . . At first the restaurant inhabited a small dining room directly at the corner of 6th and A.  It soon expanded to the space next door that had been Sophie's Bar, and finally grew into a back room formed from other neighboring spaces.  In temperate months Sidewalk's outdoor café seating takes center stage, creating the perfect venue for any meal and the best outdoor brunch in NYC." (See* http://www.sidewalkny.com/history/).

55.     Upon information and belief, Defendant Pinchas Milstein was a constant presence at the Sidewalk Café.  Upon information and belief, Defendants Amnon Lucy Kehati and Jona Szapiro regularly visited the Sidewalk Café to check in on their managers and the operations of the restaurant and took an active role in ensuring that the restaurant was run in accordance with their procedures and policies.

56.     Upon information and belief, at all times relevant, Defendants Pinchas Milstein, Jona Szapiro, and Amnon Lucy Kehati, in conjunction with Helah Kehati, has had power over payroll and personnel decisions at Sidewalk Café, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

57.     **Plaintiff Ricardo Ramos Luna** was employed by Defendants as a line cook, food prep, and repair man, from in or around February 2014 through February 24, 2019.

58.     For the first two (2) weeks of his employment period, in or around February 2014,

Plaintiff Ramos was scheduled to work six (6) days per week, with Sundays off.  Plaintiff Ramos typically worked from approximately 8:00 am to approximately 8:00 pm, for a total of seventy-two (72) hours per week.  For the following approximately four (4) months of his employment period, Plaintiff Ramos was scheduled to work four (4) days per week, with the following hours: Mondays and Tuesdays, from approximately 5:00 pm to approximately 1:00 am, and Saturdays and Sundays from between approximately 10:00 am and 11:00 am to approximately 1:00 am, for a total of approximately forty (40) to forty-two (42) hours per week.

59.    Thereafter, from in or around summer 2014 to in or around 2016, Plaintiff Ramos was again scheduled to work six (6) days per week, with most Thursdays off.  Plaintiff Ramos typically worked Mondays to Fridays from approximately 5:00 pm to approximately 1:00 am, and Saturdays and Sundays from approximately 11:00 am to approximately 10:00 pm, for a total of approximately fifty-four (54) hours per week.

60.    For the last portion of his employment period, from in or around 2016 to in or around February 2019, Plaintiff Ramos was scheduled to work six (6) days per week, with most Mondays off.  Plaintiff Ramos typically worked Tuesdays to Fridays, from approximately 5:00 pm to between approximately 2:00 am and 3:00 am, and Saturdays and Sundays from between approximately 11:00 am and 12:00 pm to between approximately 1:00 am and 2:00 am, for a total of approximately sixty-two (62) to seventy (70) hours per week.

61.     For his work, at the beginning of his employment period in or around February 2014, Plaintiff Ramos was paid the amount of thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  After the first two (2) months of his employment period, until in or around 2015, Plaintiff Ramos received an increase in his

payment and was paid the amount of fourteen dollars ($14.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek. In or around 2015, Plaintiff Ramos received an offer to work for another restaurant with a higher rate of payment, and when he informed his employers at Sidewalk Café, they promised a raise in his compensation in order to keep him working at their establishment. For that reason, during 2015, Plaintiff Ramos was paid the amount of sixteen dollars ($16.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

62.    In or around mid-2016 or at the end of the year, Defendants, reduced Plaintiff Ramos' rate to fifteen dollars ($15.00) per hour. From in or around 2016 to in or 2018, Plaintiff Ramos was paid the amount of fifteen dollars ($15.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek. In or around July 2018 until the end of his employment period in February 2019, Plaintiff Ramos was paid the amount of sixteen dollars ($16.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

63.    During Plaintiff Ramos' employment period, Plaintiff Ramos was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

64.    Throughout his employment period, Plaintiff Ramos received his weekly payment in an envelope, entirely in cash, without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate. In or around 2015, and for a period of around two (2) or three (3) months, Plaintiff Ramos was required, in order to receive his weekly payment, to sign his name in a notebook Defendants kept at the restaurant, which indicated his name, the amount he was receiving in cash, and the date Defendants were providing him that

payment.

65.      **Plaintiff Antonio Julian Lucas** was employed by Defendants as a dishwasher, food prep, porter, and repair man, from in or around July 1990 through February 24, 2019.

66.      For the relevant time period, from in or around 2013 to the end of his employment period in February 2019, Plaintiff Julian was scheduled to work six (6) days per week, with most Tuesdays off.  Plaintiff Julian typically worked Mondays to Fridays, from approximately 8:00 am to between approximately 6:00 pm and 6:30 pm, and Saturdays and Sundays from approximately 7:00 am to between approximately 4:30 pm and 5:00 pm, and sometimes longer if the restaurant was especially busy, for a total of approximately fifty-nine (59) to sixty-two (62) hours per week, or sometimes longer.

67.      For his work, during the relevant time period, from in or around 2013 to in or around 2014, Plaintiff Julian was paid the amount of thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.    From in or around 2014 to in or around January 2019, Plaintiff Julian was paid the amount fifteen dollars ($15.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  For the last two (2) months of his employment during 2019, Plaintiff Julian was paid the amount of sixteen dollars ($16.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.

68.      Throughout Plaintiff Julian's employment period, Plaintiff Julian was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

69.      From in or around 2013 to the end of his employment period, Plaintiff Julian received his wages in a combination of cash and a pay stub with an incorrect amount of hours

worked during the course of the week.

70.    Plaintiff Julian was instructed by his manager to only recordhis hours through the POS system for three (3) of the six (6) days he was scheduled to worked during the week.  As such, Plaintiff Julian's pay stubs usually reflected an incorrect number of hours worked during the course of the week.

71.    **Plaintiff Martin Candelario Tepepa** was employed by Defendants as a line cook, food prep, and dishwasher at Sidewalk Café from in or around June 2016 through February 24, 2019.

72.    For the first eight (8) months of his employment, from in or around June 2016 to in or around February 2017, Plaintiff Tepepa was typically scheduled to work six (6) days per week, with most Sundays off.  Plaintiff Tepepa typically worked with the following schedule:  Mondays from approximately 10:00 am to between approximately 11:00 pm to 12:00 am (double shift); Tuesdays, Wednesdays, and Thursdays, from approximately 10:00 am to approximately 4:00 pm (single shift); Fridays, from approximately 10:00 am to approximately 5:00 pm (single shift); and Saturdays from approximately 10:00 am to between approximately 11:00 pm and 12:00 am (double shift), for a total of approximately fifty-one (51) to fifty-three (53) hours per week.

73.    From the remaining portion of his employment period, from in or around February 2017 to February 2019, Plaintiff Tepepa was scheduled to work four (4) days per week, with the following schedule:  Mondays, from approximately 4:00 pm to approximately 12:00 am; Fridays, from approximately 2:00 pm to approximately 11:00 pm; Saturdays, from approximately 10:00 am to between approximately 11:00 pm and 12:00 am (double shift), and Sundays from approximately 10:00 am to approximately 3:00 pm, for a total of approximately thirty-five (35) to

15

thirty-six (36) hours per week.

74.     For his work, at the beginning of his employment period in or around June 2016 to in or around 2017, Plaintiff Tepepa was paid the amount of twelve dollars ($12.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.   From in or around 2017 to the end of his employment period, Plaintiff Tepepa was paid the amount of thirteen dollars ($13.00) per hour, for all hours worked, including hours worked beyond forty (40) in a given workweek.

75.     During a portion of Plaintiff Tepepa's employment period, Plaintiff Tepepa was not paid the legally-required minimum wage for all hours worked and, throughout his employment was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

76.     Throughout his employment period Plaintiff Tepepa received his weekly payment in an envelope, entirely in cash, without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.

77.     **Plaintiff Sebastian Calel Zapeta** was employed by Defendants as a dishwasher, porter, and delivery employee at Sidewalk Café, and as a janitor/cleaner of the common areas of the mixed used building owned by Defendants located at 94-96 Avenue A, New York, New York 10009, where Sidewalk Café  was located, from in or around September 2017 to in or around February 24, 2019.

78.     Throughout his entire employment period, Plaintiff Calel was typically scheduled to work six (6) days per week, with most Mondays off.  Plaintiff Calel typically worked with the following schedule:  Tuesdays, Wednesdays, and Thursdays, from between approximately 4:30

pm and 5:00 pm to between approximately 1:30 am to 2:00 am; Fridays, from between approximately 4:30 pm and 5:00 pm to approximately 3:00 am; Saturdays, from approximately 6:00 pm to approximately 10:00 am (double shift); and Sundays, from between approximately 6:00 pm and 7:00 pm to approximately 12:00 am, for a total of approximately fifty-six and one half (56.5) to sixty-one (61) hours per week.

79.     For his work, at the beginning of his employment period in or around 2017, Plaintiff Calel was paid the amount of eleven dollars ($11.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.   From in or around the end of 2018 until the end of his employment period in or around February 2019, Plaintiff Calel received an increment in his payment and was paid the amount of twelve dollars ($12.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  In or around the beginning of 2018, when the legally-required minimum wage for large employers increased to thirteen dollars ($13.00) per hour, Plaintiff Calel approached the Manager of the restaurant, "Vinnie" to request an increase in his compensation to which "Vinnie" responded *"…I cannot pay you the thirteen dollar rate due to the fact that I am paying you in cash…"*.

80.     During most of Plaintiff Calel's employment period, Plaintiff Calel was not paid the legally-required minimum wage for all hours worked and, throughout his entire employment period was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours worked over forty (40) each workweek.

81.     Throughout his employment period, Plaintiff Calel received his weekly payment in an envelope, entirely in cash, without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.

82.     During their respective employment periods, although Plaintiffs have typically worked a spread of more than ten (10) hours per day and/or split shifts, they have not received spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

83.     Throughout their respective employment periods, Plaintiffs have not been provided with wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments each week.

**Defendants' Unlawful Corporate Policies**

84.     Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

85.     Plaintiffs spoke with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked was a corporate policy of Defendants which applied to all of their non-management employees throughout the Class Period.

86.     Plaintiffs spoke with other employees of Defendants who were similarly paid an hourly rate for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants which applied to all non-management employees throughout the Class Period.

87.     Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which

18

Plaintiffs worked a spread of more than ten (10) hours and/or a split shift was a corporate policy which applied to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

88.    Defendants did not provide Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

89.    Throughout the Class Period and, upon information and belief, Defendants likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

90.    Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

91.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

92.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

19

93.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

94.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

95.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

96.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

98.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

99.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Class Members)**

100.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

102.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

103.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

104.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

105.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

106.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

107.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

108.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

109.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

111.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

112.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

113.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

114.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages

24

as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

25

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       September 25, 2019

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

27

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Antonio Julián Lucas_
Signature

_Antonio Julián Lucas_
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Antonio Julián Lucas_
Firma

_Antonio Julián Lucas_
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Martin Candelario Tepepa
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Martin Candelario Tepepa
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

*Ricardo Ramos Luna*
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentacion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

*Ricardo Ramos Luna*
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Sebastian Calel Zapeta
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Sidewalk Bar & Restaurant, EAE Corp., 94-96 Avenue A Realty Corp., Jona Szapiro, Pinchas Milstein, Helah Kehati, Amnon Lucy Kehati y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Sebastian Calel Zapeta
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.