

**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

November 16, 2020

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA CM/ECF**

Honorable Katherine Polk Failla
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**MEMO ENDORSED**

**Re:** *Julian Lucas, et al. v. EAE Corp., et al.*
<u>Civil Action No. 19 Civ. 08920 (KPF)</u>

Dear Judge Failla:

  We represent plaintiffs Antonio Julian Lucas, Martin Candelario Tepepa, Ricardo Ramos Luna, and Sebastian Calel (the "Plaintiffs") with respect to their claims for unpaid minimum wages, unpaid overtime and spread-of-hours premiums, and for failure to provide proper wage notices and wage statements against EAE Corp. d/b/a Sidewalk Bar & Restaurant, 94-96 Avenue A Realty Corp., Pinchas Milstein, Jona Szapiro, and Amnon Lucy Kehati (collectively, the "Defendants"). We write, on behalf of all parties, seeking the Court's approval of the parties' settlement, pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and Your Honor's October 16, 2020 Order (Dkt. No. 32). The Parties believe that the Settlement Agreement and Wage and Hour Release ("Settlement Agreement") attached as Exhibit A[1] to the Affidavit of Brent E. Pelton in Support of Plaintiffs' Motion for Approval of FLSA Settlement (hereinafter "Pelton Affidavit"), constitutes a fair and reasonable compromise of this matter, which should be approved by the Court.

**I.  Procedural History and Plaintiff's Allegations**

  Plaintiffs commenced this action by filing a Class & Collective Action Complaint in the Southern District of New York on September 25, 2019 against Defendants. (Dkt. No. 1). On November 13, 2019, the court referred the action to mediation under Local Civil Rule 83.9. (Dkt. 21). Defendants filed their Answer on December 2, 2019, denying all material allegations. (Dkt. No. 22). The Parties participated in a formal mediation session before Chris D'Angelo, Esq. (the "Mediator") on January 24, 2020 at the SDNY. In preparation for the mediation, the Parties exchanged relevant information including, but not limited to, wage and hour information regarding the Plaintiffs, a damages computation, and information concerning the role of each of the

---

[1] Plaintiff Calel and the Defendants have not yet signed the Settlement Agreement. The parties will file the fully-executed version with the Court upon receipt of the outstanding signatures.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Honorable Katherine Polk Failla
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **2** of **7**

Individual Defendants in the operation of the Corporate Defendant. The Parties were unable to reach a resolution at the initial mediation session but agreed to a further exchange for information including Defendants' financial records as well as information regarding the personal financial condition of each individual defendant. The Parties contemplated holding a second mediation session on February 28, 2020; however, due to a delay in the exchange of financial information regarding the Defendants, a second mediation session was ultimately not held.

Over the next several months, the Parties' settlement negotiations came to a halt, due in part to Defendants' counsel's health-related issues. (*See* Dkt. No. 25). The Parties resumed their settlement negotiations in or around mid-July, 2020, after which the Parties requested an extension of time to exchange additional information and pursue settlement, which the Court granted. (Dkt. Nos. 27-28). On September 15, 2020, counsel for Defendants informed the Court that they had exchanged financial information with respect to the Individual Defendants, and the Parties were progressing with settlement negotiations. (*See* Dkt. No. 29). After several additional discussions via telephone and email over the course of the next several weeks, the Parties ultimately were able to negotiate a settlement in principle of the action on behalf of the Plaintiffs and informed the Court on October 16, 2020 that the Parties were working to finalize a settlement with their respective clients. (Dkt. No. 31). Over the next few weeks, the Parties reached a final agreement on all terms, which was memorialized in the attached Settlement Agreement (Ex. A)[2].

## II.   The Settlement Accounts for Litigation Risk

Although the Parties hold significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability, the parties have agreed to a settlement amount of **$87,500.00** for the Plaintiffs, inclusive of attorney's fees and costs.

It is Plaintiffs' position that, throughout their respective employment periods, Defendants did not properly or accurately track the total number of hours that Plaintiffs worked. Defendants acknowledge that they did not have a timeclock but deny that their timekeeping system of keeping a written record of hours worked was not accurate. However, since there was a lack of records maintained by Defendants relating to hours worked and wages paid, for purposes of settlement, the Parties have largely accepted Plaintiffs' best recollection of their total hours worked and wages received. For their work, across the board, Plaintiffs claim that they were paid a flat hourly rate for all hours worked, including those in excess of forty (40) hours, and therefore did not receive overtime premiums or spread-of-hours premiums when working a shift in excess of ten (10) hours. (*See generally* Dkt. No. 1). In addition, Plaintiff Zapeta alleged that for certain periods of his employment with Defendants, his hourly rate was below the applicable minimum wage and therefore he did not receive at least minimum wage for all hours that he worked. Defendants deny that they paid any employees below minimum wage and deny that Plaintiffs worked significant overtime hours, and contend that the Plaintiffs were paid appropriately for all hours that they worked. Plaintiffs also alleged that they were paid their wages either entirely in cash or through a combination of cash and check, without a proper paystub.

---

[2] Unless otherwise stated, all exhibits are attached to the Pelton Affidavit, filed contemporaneously herewith.

www.PeltonGraham.com

Perhaps more significant to the ultimate resolution of this matter, however, was the Parties' disagreement regarding the personal liability of the individual Defendants and the ability to satisfy a judgment if one were obtained by the Plaintiffs. Specifically, the Parties dispute the individual Defendants' involvement in the operation of the Defendants' restaurant, and therefore their liability with respect to the claims Plaintiffs have presented in the Complaint. Defendants allege that two of the three individual Defendants named in the Complaint were not "employers" of Plaintiffs pursuant to the FLSA and NYLL, and that at no point during the relevant time period did they direct or control Plaintiffs and the Corporate Defendants' other similarly situated employees but acted solely as absentee "investors" in the business. In addition, Defendants contended that the only defendant involved in the operations of the restaurant, defendant Pinchas Milstein, did not receive substantial assets from the sale of the premises where the restaurant was located and is not have the financial condition to fund a litigation, let alone a substantial judgment. In support of their position, Defendants provided relevant information with respect to the ownership and sale of the premises where the Corporate Defendant operated, as well as personal financial information regarding defendant Milstein, strongly maintaining that Defendants' ability to pay poses a significant risk for Plaintiffs should the Parties not reach a resolution by settlement of the action.

Notwithstanding the above disputes, in furtherance of the mediation, Plaintiffs' counsel calculated individualized damages for Plaintiffs based on Plaintiffs' best estimates of the hours worked throughout their employment periods, and the wages they received from Defendants for such work. Plaintiffs' damages analysis resulted in a total of approximately $322,778.45, including $4,433.43 in unpaid minimum wages (for Plaintiff Zapeta), $95,539.59 in unpaid overtime damages[3], $24,946.03 in unpaid spread-of-hours premiums, for a total of $124,919.05 in "actual" unpaid damages, plus an equal amount in liquidated damages ($124,919.05), $20,000 for wage notice violations, $20,000 for wage statement violations, and interest in the amount of $32,940.36.

Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive a lesser amount, or no damages at all. Throughout the mediation process, Defendants have reiterated that Defendants' business has been shut down since January 2019, which has resulted in Defendants being faced with a dire financial situation. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may later be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement. The parties believe this is a fair recovery given the risks associated with proceeding to trial and Defendants' ability to pay which was likely worsened due to the pandemic, and indeed was a substantial factor in proceeding with negotiations as opposed to discovery and motion practice.

---

[3] Plaintiffs' counsel specifically calculated approximately $43, 073.02 in unpaid overtime premiums, and $13, 813.89 in unpaid spread-of-hours premiums for Plaintiff Julian Lucas; a total of $40, 624. 07 in overtime premiums and $7, 214.00 in spread-of-hours damages for Plaintiff Ramos; a total of $2514.86 in unpaid overtime premiums and $1,954.43 in unpaid spread-of-hours premiums for Plaintiff Tepepa; and a total of $9, 237.64 in unpaid overtime premiums and $1, 963.71 in unpaid spread-of-hours premiums for Plaintiff Zapeta.

www.PeltonGraham.com

### III.  Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of **$87,500.00** (the "Settlement Amount"). Of that amount, **$29,899.73** is payable to Plaintiffs' counsel (including **$1,529.45** in expense reimbursements and **$28,370.28** in attorneys' fees). The remaining **$57,600.27** is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Settlement Agreement making it clear that nothing in the Settlement Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The Settlement Agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds both Parties. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving

bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the Settlement Agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the Pelton Affidavit, as of November, 16, 2020, Plaintiffs' counsel has spent more than **95.53** hours in prosecuting and settling this matter, resulting in a lodestar of **$24,615.28**. Plaintiffs' counsel has spent **$1,529.45** in actual litigation costs from filing and serving the complaint. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., **$28,370.28**) represents thirty-three percent (33%) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.15 multiplier of the lodestar and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreement. Specifically, the retainer agreement between Plaintiffs and their counsel set forth a contingency fee of up to one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Although the applicable rates are those approved in the SDNY, the prevailing rates in the EDNY are similar, if not lower than those typically approved in the SDNY. *Allende v. Unitech Design, Inc*., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases," citing cases); *Torres v. Gristede's Operating Corp*., No. 04-CV-3316, 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'") (internal citations omitted). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

### V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations, consisting of numerous communications and exchanges between the Parties, including a mediation through the SDNY Mediation Program, during which the Parties discussed the merits of Plaintiffs' allegations and the defenses thereto, as well as the Parties' dispute over the involvement and liability of each of the Individual Defendants. Additionally, the Plaintiffs are former employees of Defendants so the fear of possible coercion is not at issue here. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to prevail on his FLSA claims in this litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\*     \*     \*     \*     \*

      As demonstrated above, the settlement is a result of substantial negotiations and compromise by all Parties. Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiff and we respectfully request that the Court approve the Settlement Agreement.

      We appreciate Your Honor's attention to this matter.

      Respectfully submitted,

      */s/ Brent E. Pelton*

      Brent E. Pelton, Esq. of
      PELTON GRAHAM LLC

Enclosure

cc:    All counsel (via CM/ECF)

```
The Court has reviewed the settlement documents for fairness in
accordance with the FLSA and Second Circuit law, see, e.g.,
Cheeks v. Freeport Pancake House, 796 F. 3d 199 (2d Cir. 2015),
and has concluded that the terms are fair and reasonable.  It
should be noted, however, that the Court is not in this
endorsement opining specifically on the reasonableness of the
rates charged by the attorneys and paralegals representing
Plaintiffs.

Accordingly, the settlement is approved, and the Clerk of Court
is directed to terminate all pending motions, adjourn all
remaining dates, and close this case.
```

Dated:  November 19, 2020      SO ORDERED.
        New York, New York

                                              HON. KATHERINE POLK FAILLA
                                              UNITED STATES DISTRICT JUDGE